MISS. AND TENN. R. R. Co. v. H. I. GILL.

66   39
d79  437

1. RAILROADS. *Conductor. Insult to passengers. Damages.*
   Although there is a breach of duty by the conductor of a railroad train toward a passenger, yet, in the absence of willful wrong, oppression, or reckless disregard of his rights, mere brusqueness in the words or manner of the conductor toward the passenger is not an insult which justifies the infliction of punitive damages against the company.

2. SAME. *Failure to stop train. Punitive damages. Case in judgment.*
   Upon the arrival of the train at their station, plaintiff and wife were prevented from alighting before the train moved off, owing to the crowding into the car of a large number of excursionists. In his efforts to signal the engineer to stop the plaintiff broke the bell-cord. The train had moved two or three hundred feet, when plaintiff demanded that the conductor stop the train. This the conductor refused to do, because "the train carried the U. S. mail." At the same time he chided plaintiff for having broken the bell-cord, but he offered to take plaintiff and wife to the next station, six miles, whence they could return on an excursion train in an hour. This was done, plaintiff paying return fare. *Held*, not a case for punitive damages.

3. PRACTICE. *Evidence. Recalling witness.*
   Where a witness has been examined and dismissed, and a subsequent witness upon the same side is questioned on cross-examination as to new matters, about which, however, he is not informed, but about which the first witness is conversant, it is right to allow the first witness to be recalled and examined in reference to such matters.

APPEAL from the circuit court of Tate county.

HON. W. M. ROGERS, Judge.

The plaintiff, Gill, and his wife were passengers upon the train of defendant, with tickets to Senatobia, their home. Upon the arrival of the train at that station they arose to leave the car, but were prevented from alighting by the crowding into the coach of a large number of excursionists, who desired to get on board, and for the most part sought to enter at the end of the coach at which plaintiff and his wife were seeking an exit. The conductor was assisting passengers at the other end of the car. The train stopped a very short time, as was usual at that station, and moved off before plaintiff and his wife had succeeded in getting out.

When the train started plaintiff called to a friend to pull the bell-cord to signal the engineer to stop, which was done, and in doing so the bell-cord was accidentally broken.

After the train had gone about two or three hundred feet, plaintiff saw the conductor and demanded that he stop the train and allow him and his wife to get off, telling him that he had important business and that his wife was sick. The conductor replied that the train carried the United States mail, and could not stop for anything, and, at the same time, said : " You have broken my bell-cord, sir." Plaintiff testifies that this was said in angry and insulting manner, although he does not state what his manner was and wherein it was insulting. The conductor informed plaintiff that there would be an excursion train returning to Senatobia in an hour, and he could return on it, and that he would see the conductor of that train about it. Plaintiff stopped at the next station and waited one hour and returned on the excursion train, paying sixty cents to return.

Several days after returning, plaintiff wrote to the general superintendent of the railroad company, recounting the circumstances, and asking for damages for the " unjust, unkind, and cruel manner in which he and his wife were treated." The language of the conductor to him was set out in the letter, but nothing was said as to his language or manner being insulting, or being so construed. The plaintiff lost one day from his business as bookkeeper, but it was not charged up to him. No actual damages, besides the sixty cents for return passage, was shown. This suit was brought by H. I. Gill, who laid his damages at four thousand dollars.

One Russell, station agent of defendant at Senatobia, was introduced as a witness for the defendant and examined at length. Afterward plaintiff interrogated another witness for defendant upon cross-examination as to the custom of conductors to telegraph the arrival and departure of trains at stations, and as to the record kept of such telegrams. This witness did not know whether such record was kept or not. Defendant then recalled Russell, who had not been asked about this when on the stand, and offered to prove that such a record was not kept, and that the messages

announcing the arrival and departure of the trains were never preserved. No objection was made by counsel to the re-introduction of the witness, Russell, but the court refused to allow him to testify again, because, as the judge stated, he had once been upon the stand, and it was defendant's duty then to have exhausted his testimony—that this was the rule of the court.

The court refused to charge the jury for the defendant that plaintiff was not entitled to punitive damages. Numerous instructions appear on the record, but it is not necessary to set them out, as the opinion upon that subject is confined to a consideration of the single instruction, refused as above.

The verdict awarded plaintiff four hundred dollars, and the court having refused to set it aside, the defendant appeals.

*Oglesby & Taylor,* for appellant.

The proof shows that appellee had ample time to alight from the car by the use of ordinary efforts and diligence. The removal of baggage, loading, and receipting for several packages of express, the sale of fifteen or twenty tickets by the agent while the train was stopped—all these circumstances show that the defendant's witnesses were correct in stating that the stop was longer than usual. It was the plaintiff's mistake and misfortune that he went to the wrong door of the car.

It was manifestly wrong to refuse the defendant's charge that this was not a case for punitive damages. *Forsee* v. *Ala. G. S. R. R. Co.,* 63 Miss. 73 ; *Chicago R. R. Co.* v. *Scurr,* 59 Miss. 463. Appellee's claim for such damages was a pure afterthought. His first claim (see his letter to the company) was that he and his wife were crushed and injured, that his wife had been sick four days, confined to bed and attended by a physician. Although he recited the language and acts of the conductor, there was no intimation that he was insulting. His language was certainly not insulting. If his manner was, it should be stated, so that it could be seen wherein it was insulting. Gill is not to be the judge of this. There was no willful wrong or reckless disregard of plaintiff's rights. It is evident that he wished to be insulted. It paid to be insulted. If railroad companies are to be liable in such case,

it may now be conceded that the manner will always be insulting.

The court should have permitted the witness Russell to be recalled and examined. Even upon the court's theory, the ruling was an arbitrary use of judicial discretion. It was not a case of recalling a witness to prove a fact overlooked, but to explain and make clear the truth as to a matter brought out by appellee's attorney on cross-examination of a succeeding witness.

*T. W. White,* on same side.

The proof abundantly shows that the train stopped a reasonable and sufficient length of time. It is claimed that under the circumstances plaintiff was hindered from getting off. If this be so, the circumstances were not caused by any improper act of the company. It is not pretended that the employees were not at their posts, or that any of them knew that Gill and his wife had not gotten out. No proof is in to show that any of them knew that the crowd was interfering with the disembarking of Gill and wife. It is not clear that the conductor had the right to interfere with passengers entering the car under the circumstances proven. *N. O., St. Louis & C. R. R. Co.* v. *Burke,* 53 Miss. 226.

To justify punitive damages, there must be a reckless disregard of plaintiff's rights. The recklessness complained of seems to have been in starting while certain persons held the guard-rail of the platform. If this were true, recklessness toward others could not be invoked by Gill, who was safe in the cars.

The insult feature of the case did not develop until long after the supposed injury, and there is no proof of any insult. An insult that does not "take" for three days is too mild for punitive damages.

*W. B. & J. B. Harris,* on same side.

The question whether a case is to be dealt with as one for punitive damages is one for the courts, and this court will review the action of the court below. *Railroad Co.* v. *Scurr,* 59 Miss. 456. The term reckless, as applied to conduct, is a disregard of consequences, with knowledge of them or their obvious probability. As dealt with in the light of punishable conduct, these consequences must have a certain character of seriousness, to which something

like criminality would attach, and must actually involve for the party suing here his personal safety ; and in a case like this, where nothing but the most trivial pecuniary loss, itself an accident, enters into the matter, there must be something like exposure or bodily hurt inflicted by the act.

If the decision of the conductor to wait and send Gill back in an hour was violative of his rights, it was not recklessness, and to a man of equable temper the disappointment was trivial. The naked case is merely one of annoyance to an impatient man of irritable temper.

The insult part is manifestly a manufactured exaggeration. The bone of quarrel is without meat. The letter of Gill evidences a purpose and capacity for exaggeration that is not the offspring of passion. It is a *metallic* or *pecuniary* feeling that is displayed. It first took the turn of pay for lost time, medical expense, bodily suffering, and, that being exploded, it set itself to work on feelings wounded by insult. When even-handed justice is called to arbitrate, the case is seen to be a fiction, an invention—lamp-black and paste made to represent features that do not belong to it.

*Shands & Johnson,* for appellee.

Under the undisputed facts of this case, the plaintiff was entitled to actual damages. He was wholly unable to get off during the brief stop of the train, which was not sufficient. He was entitled to get off at the side, where provision was made for his safety, and where passengers usually get off. Thomp. Carriers 66, 226 ; *N. O., J. & G. N. R. R. Co.* v. *Statham,* 42 Miss. 607 ; Hutch. Carriers, § 646 ; *McDonald* v. *R. R. Co.,* 26 Iowa 124. Gill's compulsory submission to the alternative of going to the next station and returning does not alter his rights. *Thompson* v. *R. R. Co.,* 50 Miss. 315.

The main fight in this case is on the question of exemplary damages. The decisions are harmonious that any wrong inflicted upon another, accompanied by fraud, malice, oppression, or in a willful or reckless disregard of rights, or through gross negligence, evincing a willful or reckless disregard of rights, may be punishable by punitive damages. *Higgins* v. *L., N. O. & T. R. R. Co.,* 64

Miss. 80; *N. O., St. L. and C. R. R. Co.* v. *Burke,* 53 Ib. 200; *N. O., J. & G. N. R. R. Co.* v. *Hurst,* 36 Ib. 660; *Heirn* v. *M' Caughan,* 32 Ib. 17; *N. O., J. & G. N. R. R. Co.* v. *Statham, supra.*

The court correctly announced the law in this respect by the instructions. The plaintiff's testimony certainly makes out a case for such damages, and the jury, which passes on the credibility of the witnesses, credited his statement. The conductor not only refused to stop the train, but chided Gill about the breaking of the bell-cord. His manner was harsh, abrupt, and insulting. We submit that the very words used, under the circumstances, were inconsistent with a polite and pleasing address. His words were harsh, abrupt, and untrue. What a miserably false plea, that the running of the mail train on time is so important that it cannot stop long enough to let a couple of passengers alight! And that, too, when the train had just started, had not gone more than two or three hundred feet. The mention of the bell-cord being broken was not at the time Gill asked him to stop, but it was an afterthought, and was not mentioned then as an excuse for not stopping. He made no effort to signal the engineer in any way.

In all the cases of this kind reported in our state, the wrong was in the conductor stopping the train beyond the station and refusing to back it. This is a refusal merely to stop. Gill did not ask him to return to the station, though only three hundred feet away, but only to stop. This was abruptly, harshly, and discourteously refused, and a scolding thrown in to make the six-mile ride all the more interesting. The testimony warranted the charges and these were correct.

The verdict was not excessive. *Higgins* y. *L., N. O. & T. R. R. Co.,* 64 Miss. 80; *N. O., J. & G. N. R. R. Co.* v. *Hurst,* 36 Miss. 660. The judgment should be affirmed.

CAMPBELL, J., delivered the opinion of the court.

This is not a case for punitive damages even on the evidence produced by the plaintiff, and the court erred in not so ruling. Brusqueness on the part of a railroad conductor is not an insult for which his employers are to be punished where it amounts to no

more than appears in this record.    The notion that he was insulted by the conductor appears to have been an afterthought of the plaintiff succeeding his letter of complaint to the company, in which he made no mention of having been insulted, but based his claim to damages on the wrong done him and wife in not being allowed to get off at Senatobia.    It is manifest that the plaintiff was a victim of one of those petty accidents liable to occur in railroad travel. He was unfortunate in choosing as his point of departure from the car the end which was beset by a host of his fellow-villagers who were so determined to get in that he and his wife could not get out, and as a consequence he was carried six miles and detained an hour and had to pay sixty cents to get back.    He should content himself with compensation.

As a matter of practice the court erred in not permitting the witness, Russell, to be recalled and examined as to a phase of the case developed by the examination of the plaintiff's attorneys, after Russell had been examined and dismissed from the witness-stand.    As we understand from the record, after Russell had been examined the counsel for the plaintiff inquired of the witness of defendant as to the habit of dealing with the telegraphic messages sent by conductors from each station announcing arrival of trains. This witness was not conversant with the matter, and it was proposed by counsel for defendant to examine Russell, who was informed on the point, but the court refused to permit this, because Russell had once been on the stand, and all his knowledge applicable to the case should then have been elicited.    The admirable rule, which was applied by the court, was not applicable, because the occasion for examining the witness as proposed did not arise until after his examination.

*Reversed and remanded.*