JACKSON ELECTRIC RAILWAY, LIGHT & POWER COMPANY v.
ROBERT LOWRY.

STREET RAILWAY.    Crossings.    Duty to stop for passengers.

A street railway company is under a duty to stop its cars at all regular street crossings, on a reasonable signal, to receive those desiring to take passage; and where a car has passed beyond a crossing from twenty to forty feet, a rule of the company forbidding its operatives to back cars in such cases is unreasonable, and will not justify them, on a rainy night when the road is very muddy, in refusing to back the car so as to reach the crossing for an intending passenger, and, the evidence otherwise justifying it, exemplary damages are allowable for such misconduct.

FROM the circuit court of first district, Hinds county.

HON. ROBERT POWELL, Judge.

The appellee, Robert Lowry, was plaintiff, and the electric railway, etc., company defendant in the court below. On or about March 15, 1901, the plaintiff, Robert Lowry, a citizen of Jackson, having just returned from a trip, went to the crossing at the intersection of Yazoo and State streets, in said city, for the purpose of taking passage on defendant's car to Fortification street, seven blocks northward. Plaintiff carried a heavy satchel. The night was dark and stormy. At the place in question there was but one pavement or crossing, and that was on the south side of Yazoo street. There was no pavement or crossing on the north side whatever. Plaintiff took his stand near the track on the crossing, and signaled an approaching car, desiring and intending to take passage and to pay his fare. The signal was duly seen by the defendant's servant, but, for some reason, he failed or refused to stop the car at the crossing, but ran some twenty or more feet, but not exceeding forty feet, beyond. The railway company had been previously ex-

cavating along its tracks, and there then remained much loose dirt piled up along its tracks for some distance, and the then prevailing rains had left the entire street beyond the brick crossing very wet and muddy.   It further appeared from the evidence that defendant's street cars had been accustomed to stop at this brick crossing on the south side of Yazoo street to take on passengers, and plaintiff testified that he himself had frequently boarded the cars at this very crossing, there being no crossing of any sort on the north side.   After the car passed beyond the crossing, the conductor beckoned the plaintiff to come ahead, and he undertook to do so, but, when he stepped into the street, the mud came over his shoe tops, and he refused to go further, but demanded that the car be brought back to the crossing.   The conductor refused to do this, but told plaintiff to come around on the other side of the track.   Plaintiff then undertook to reach the car in that way, but again stuck in the mud, and had to return to the crossing.   Plaintiff again demanded that the conductor back the car, so that he could get on, but the conductor peremptorily refused so to do, giving as his excuse that there was a rule or order forbidding the backing of cars.   The undisputed testimony for plaintiff showed that it had been the custom of the defendant to back its cars when they had passed the proper crossings.   On the return trip of the car, the plaintiff got aboard and demanded the conductor's name, who replied several times in a rude manner.   Plaintiff then left the car, and was followed by the laughter, jeers and ribald songs of the conductor until he reached the sidewalk, when the car moved on.

The plaintiff recovered judgment for $500, and defendant's motion for new trial having been overruled, this appeal was prosecuted.

*Williamson, Wells & Croom,* for appellant.

The plaintiff desired to go north on a street car of defendant, from the intersection of State and Yazoo streets, in the city of Jackson.   He stopped on the south side of the crossing and

hailed a car which was coming north.    The motorman saw him, and stopped the car on the north side of the crossing, according to defendant's rule.    The street was muddy, and plaintiff refused to board the car when it stopped, and requested the conductor to back the car to the point where plaintiff was standing.    The conductor declined to do so, giving as his reason that it would be a violation of the rules of the company. The plaintiff then again declined to get on board the car, and started off, whereupon the conductor gave the signal to go, and went on up State street, and plaintiff also proceeded up the same street on foot.

The court erred in granting the instructions for the plaintiff. This is not a case which would justify the infliction of punitive damages.    And by the giving of the second instruction for plaintiff, the jury were, in effect, told that the mere hailing of a car by a signal, which was seen by defendant's employees, established the relation of passenger and carrier, and that if the car was stopped at a place where plaintiff would be required to go in the mud in order to board the car, and defendant's employees refused to back the car to where plaintiff was standing, that they should find for the plaintiff, and further, that if the conduct of defendant's employees was willful and wanton, that they should inflict punitive damages.

The recent case of *Vicksburg R. R. Power & Mfg. Co.* v. *James R. Marlett*, is a decision of this court in point.    In that case it is said: "It has been held in this state that punitive damages may be recovered only in cases where the acts complained of are characterized by malice, fraud, oppression or willful wrong, evincing a disregard of the rights of others. There must be some element of one or more of the qualities or properties named, relating to the act made the ground of action, before exemplary damages can be inflicted."    It is further said in that case that "a willful wrong that gives a cause of action for the imposition of exemplary damages must be denoted by a wrongful act done with a knowledge of its wrongfulness."

It may be conceded in this case that, under the peculiar circumstances, it was wrong for the conductor to refuse to back the car to where the plaintiff was standing, and if it was, the plaintiff was entitled to recover whatever actual damages he sustained, but he was not entitled to exemplary damages, and the court should have so instructed the jury. It was erroneous to submit to the jury to say whether or not the refusal to back the car was "willful and wanton." If a willful wrong is one done with a knowledge of its wrongfulness, the facts disclosed furnished no basis for the court's second instruction for the plaintiff.

The court erred .in granting the fourth instruction for the plaintiff, for the reason that by it the jury were told that in a case where the testimony showed that the sole reason for the conduct of the motorman and conductor was their obedience to a rule of the company, yet, nevertheless, this was not sufficient to show that their conduct was willful or wanton. This instruction, under the facts of the case, was clearly a violation of the principle that a willful and wanton wrong is one committed with knowledge of its wrongfulness.

The court erred in refusing to grant defendant's first instruction, to the effect that the facts of this case do not justify the infliction of punitive damages. By this action the court refused to give the benefit of the law, as it is shown to exist in the Marlett case cited *supra*, and in numerous other cases which have been decided by this court and other courts of last resort. *R. R. Co.* v. *Scurr*, 59 Miss., 456; *R. R. Co.* v. *Jarrett*, 59 Miss., 470; *R. R. Co.* v. *Gill*, 66 Miss., 39; *R. R. Co.* v. *Fite*, 67 Miss., 373; *R. R. Co.* v. *Machine Co.*, 71 Miss., 663.

Inasmuch as the streets of the city of Jackson are not under the control of the street railway company, it is not responsible for their muddy condition, and the court should have given the instruction marked No. 2, which it refused. 156 Mass., 320; 16 L. R. A., 490; 2 Hun., 124; 29 L. R. A., 300.

When a person intends to take passage on a street car, and it has been stopped to enable him to enter, he is to be regarded as a passenger while he is in the act of carefully and prudently attempting to enter. But this doctrine has no application to appellee, because the plaintiff in this case declined to take passage on the car after it was stopped. Booth on Street Railway Law, 326; 137 Mass., 210.

The court erred in overruling the defendant's motion for a new trial. The verdict was contrary to the law and the evidence, and was excessive, and this result was brought about by the erroneous instruction of the court.

*Harper & Potter*, for appellee.

Under the facts of this case the appellant owed the appellee the duty to stop at its usual stopping place and permit him to board the car. It is idle to discuss whether the relation of passenger had begun. It is sufficient that appellee had a right to become a passenger at a suitable and proper and usual place, and when appellant denied him this right by willfully and wantonly refusing to back its car a few feet to the crossing, where it was accustomed to stop, then appellant became liable to appellee in punitive damages for its willful and wanton refusal to do its duty. The right to board a car at the usual and proper place, and thus to become a passenger, is exactly of the same character as the right to get off a car at a proper and suitable place.

The duty of the common carrier in such state of case is too firmly established in this state to admit of doubt or discussion. Appellee was at the usual and proper stopping place, gave the proper signal and made the proper demand to become a passenger; he had a right to become a passenger, and if appellant wantonly and willfully refused to accept him as a passenger, then it violated the most solemn obligation and duty of the public carrier. The instructions given for plaintiff do not go as far as the decisions of this state warrant. *N. O. J. & Gt.*

*N. R. R. Co.* v. *Hurst,* 36 Miss., 660; *Pompey Higgins* v. *R. R. Co.,* 64 Mass., 80.

The excuse that there was a rule of the company forbidding the backing of cars cannot surely be regarded here as a defense to this action. The fact that a common carrier should deliberately make a rule which would render it incapable of performing its public duty as in this case, only serves to aggravate the wrong, for it makes it the willful and wanton wrong of the superior as well as the inferior officer. It only serves to make it the willful wrong of the master as well as the servant. But the defendant, in fact, failed to show that there was any such rule by proper proof. And if there had been any such rule the evidence of plaintiff showed that it was the custom of the defendant to back its cars to crossings to take on passengers, when the cars had passed such crossings.

The appellant, in the case at bar, seems to rely almost solely upon the case of *Vicksburg R. R. Co.* v. *Marlett,* recently decided by this court. But the most cursory examination of that case will show that it is wholly different from the case at bar. In that case the conductor was enforcing a regular and reasonable rule of the company, or in the language of the opinion, "Conductor Dyer was executing a rule of the company reasonable in itself."

CALHOON, J., delivered the opinion of the court.

A street railroad company is under a duty to the public to stop at regular street crossings, on a seasonable signal, to receive those desiring to take passage. It cannot avoid this duty by any practice or rules of its own. Booth on St. Ry. L., sec. 347. Its rules must be reasonable, and an absolutely contrary rule would be unreasonable. It is unreasonable for it to have a rule that where its cars stopped beyond the crossing, they should not be backed to the proper place, in order to receive the person signaling, under all circumstances. Where the distance is short and the road good, and no inconvenience is given

the proposed passenger, it is not meant to hold that such a rule might not be held proper. But it is highly improper for it to be made, or obeyed, to apply in a case like that before us. Here it was a rainy night, and the road very muddy, and the stop twenty or forty feet beyond the brick crossing, and the passenger, as known to the operatives, would have to walk seven blocks unless he got passage.

As to damages, this case cannot be grouped with the Marlett case or the cases of *Railroad Co.* v. *Scurr*, 59 Miss., 456 (42 Am. Rep., 373); *Railroad Co.* v. *Jarrett*, 59 Miss., 470; *Railroad Co.* v. *Gill*, 66 Miss., 39 (5 South., 393); *Railroad Co.* v. *Fite*, 67 Miss., 373 (7 South., 223); *Illinois Central Railroad Co.* v. *Brookhaven Mach. Co.*, 71 Miss., 663 (16 South., 252), or any of that line of decisions. It has its true classification with the cases of *Railroad Co.* v. *Hurst*, 36 Miss., 660 (74 Am. Dec., 785); *Higgins* v. *Railroad Co.*, 64 Miss., 80 (8 South., 176); *Heirn* v. *McCaughan*, 32 Miss., 17 (66 Am. Dec., 588).

*Affirmed.*