## JACKSON LIGHT & TRACTION COMPANY *v.* TAYLOR.

[72 South. 856.]

1. TRIAL. *Instructions. Assuming facts. Carriers. Passengers. Action. Instructions. Carrying beyond destination. Punitive damages.*

In an action for damages against a street railway company for carrying plaintiff beyond her destination, an instruction that it was the duty of defendant to keep a lookout for signals, to stop its cars at all regular crossings on the usual signal, and if the jury believed that the agents of defendant did not stop when signalled by plaintiff, but carried her beyond and did not back when requested to do so, plaintiff was entitled to recover damages suffered thereby, was erroneous in assuming that the signal was properly given and recognized.

2. SAME.

This instruction was also erroneous in placing upon the defendant the absolute duty to back its car for half a block when a passenger is carried beyond his destination.

3. PASSENGERS. *Carrying beyond destination. Punitive damages. Carriers.*

The language of defendant's conductor in refusing to back the car at the request of plaintiff's mother, when he said, "No, you will get off right here" and also his statement that he "did not have time" in a rough tone was not sufficient to constitute an insult, justifying an award of punitive damages.

4. CARRIERS. *Actions for injuries. Negligence. Punitive damages.*
Gross negligence cannot be built up by the addition of two acts of simple negligence.

5. SAME.

In order to justify the imposition of punitive damages there must be some willful or wanton wrong or such gross negligence as imputes willful disregard of plaintiff's rights.

APPEAL from the circuit court of Hinds county.

HON. E. L. BRIEN, Presiding Judge.

Suit by Ruby Taylor, by her next friend, Dick Taylor, against the Jackson Light & Traction Company. From a judgment for plaintiff, defendant appeals.

This action was instituted in the circuit court of Hinds county by Ruby Taylor, a minor of the age of ten years, suing by her next friend, to recover damages for the alleged negligence of the Jackson Light & Traction Company in carrying plaintiff beyond her destination. Appellee was allowed to recover punitive damages, and from a judgment awarding the sum of five hundred dollars appellant appeals.

The record shows that the plaintiff and another little girl by the name of Tutt were in company with plaintiff's mother, Mrs. Ada Taylor; that the three boarded one of the regular street cars of appellant at the Old Capitol station in the city of Jackson and paid three fares for their transportation north to Euclid street. According to the testimony of Mrs. Taylor, when the car was about half way from Fairview to Euclid, and half a block before they reached their destination, "the little girls gave the signal;" that this signal was given by raising the hand, and was the usual signal then employed by the company; that although they gave the signal, the car did not stop at Euclid street, but ran for half a block beyond the point where they desired to alight from the car; that when she saw they had passed the stopping place, she "got up and began walking towards the back end, and he (the conductor) spoke in this manner: 'Do you want to get off at this stop?' and I says, 'I do; will you please back up?' and he says, 'No, you will get off right here.'" She further testified that

the conductor "spoke rough;" that he refused to back the car to Euclid crossing, saying that "he didn't have time;" that the street in the middle of the block where the car actually stopped was muddy and wet, and that in getting off the car she and the little girls had to walk through the mud and water, and in doing so the plaintiff, Ruby Taylor, "got her feet wet, and it gave her a terrible bad cold." Mrs. Taylor further testified that the time of this complaint was about 12 o'clock in the day, and in the month of January of the year preceding the trial of the case, which was had at the February, 1914, term of circuit court. From this it appears that the little girl was about nine years old at the time of the alleged injury.

Ruby Taylor, as a witness in her own behalf, testified that, "I throwed up my hand and signaled;" that the conductor did not stop, but carried them about half a block beyond; that they "asked him to back back, and he says he can't do it; if you are going to get off this car, get off right here;" that she walked half a block in the mud and "it made me sick." On cross-examination she admits that she did not have to go to bed, and did not require the services of a physician.

After the introduction of these two witnesses the plaintiff rested; and the defendant thereupon introduced the conductor and motorman who were in charge of the car, and also a Mr. Johnson, a passenger, all of whom testified that the signal was not given until the Euclid street corner was reached, and that the car was promptly stopped thirty or forty feet beyond Euclid street. The testimony of the witnesses for the plaintiff and defendant directly conflicted as to when the signal was given, as well as the condition of the street at the point the car stopped. The defendant complains of the following instructions given the plaintiff:

(1) "The court instructs the jury for the plaintiff that it is the duty of the defendant company to keep a lookout for signals and to stop its cars at all regular crossings.

on the usual signal being given, and if you believe from the evidence in this case that the agents of defendant in charge of the car in question did not stop at Euclid street when signaled so to do, but carried plaintiff beyond said stop, and did not back back when requested so to do, then plaintiff is entitled to recover such damages as the jury may believe from the evidence she has suffered thereby.''

(2) ''The court instructs the jury for the plaintiff that if in this case you believe from the evidence that plaintiff or her mother signaled the defendant's conductor in charge of the car in question to stop at Euclid street in the usual manner, and that defendant's agents in charge of the car did not stop at said point, but carried plaintiff beyond and refused on request to back to Euclid street, and told them to get off where they were, which place was muddy, and that the conduct of the conductor in thus refusing to back his car and forcing plaintiff to alight in the mud was characterized by insult, oppression, or willful wrong, then the jury may, in addition to actual damages, if any, assess damages by way of punishment in such an amount as they may believe warranted by the evidence not to exceed the sum of two thousand dollars.''

Appellant also contends that if there is any liability at all, the verdict is grossly excessive.

*Wells, May & Sanders,* for appellant.

Appellee's counsel undertake to justify their first instruction by arguing that it does not assume the existence of material facts at issue, or if it does, they say, ''the instructions for the defendant were very ample on this point.'' The court will note that the instruction assumes the existence of two material facts at issue, viz: That the car was signalled to stop at Euclid street and that request was made to have the car back back to Euclid street, the language of the instruction being, ''did

not stop at Euclid street when signalled so to do, but carried plaintiff beyond said stop and did not back back when requested so ·to do, then plaintiff is entitled to recover damages, etc.'' Of course this instruction should have been modified so as to carry the qualification, if the jury believed from the evidence, that the car was signalled to stop and that the request was made to have the car back up to the corner. There was direct conflict in the testimony on both these points, and the rule is too well settled in this state to admit of debate, that an instruction which assumes the existence of a material fact which is at issue, is reversible error.

The other instruction for the appellee is fatally erroneous, even if it be conceded that the case is one for the infliction of punitive damages, because it is predicated of a state of facts which is conclusively negatived by the testimony. · That.is, the question of whether there was insult offered to the appellee.

Among the more recent cases dealing with the questions presented, are the following: In the case of *Y. & M. V. R. R. Co.* v. *Dyer et al.,* 59 So. 937, the judgment was reversed, among other reasons, because an instruction was given predicated on the theory of the case not supported by the testimony. The case of *Lackey* v. *St. Louis & S. F. R. Co.,* 59 So. 97, presents another recent case where the judgment of the court below was reversed because an instruction was given which eliminated one of the issues in the case.

The case of the *A. & V. Ry. Co.* v. *Cox,* 63 So. 334, illustrates the rule that a reversal is required where there is conflict in instructions, the instruction given for the plaintiff being erroneous and not cured by a correct instruction given for the defendant.

In *Newman Lumber Co.* v. *Dantzler,* 64 So. 931, this court reversed the judgment of the lower court, because of an instruction which submitted to the jury an issue not made by the testimony in the case.

In the case of *McNeill* v. *Bay Springs Bank,* 56 So. 333, this court reversed the case because of the erroneous instruction, notwithstanding a correct instruction was given for the other side, the court declaring that the instructions presented a conflict which amounted to reversible error, where there was conflict in the testimony.

The rules thus wisely announced in these several cases, are in harmony with the decisions of this court from the earliest time. Counsel cite in support of the general proposition that this was a case for punitive damages, the cases of *Railway Light & Power Co.* v. *Lowery,* 79 Miss. 431; *R. R. Co.* v. *Moreland,* 104 Miss. 312.

*M. & C. R. R. Co.* v. *Whitfield,* 44 Miss. 466, relied on by counsel, is a decision of Judge TARBELL and approves an instruction and thereby declares a rule of law, which we submit was never the law before that decision was rendered, and has not been the law at any time since, in Mississippi. The citation of this case in support of their contention perhaps illustrates, more forcibly than any argument offered by us could do, the utter absence of any real authority in justification of their contention.

The case of *R. R. Co.* v. *Moreland,* is so entirely different from the question we are discussing, that we are surprised that counsel should have referred to it, except as it is a case against a common carrier where punitive damages were held proper. No question was there involved as to the form of the instruction, and moreover, the facts in that case were wholly unlike the facts in this case. In that case the passenger was carried beyond her stop and requested the conductor to permit her to disembark from the train at the point at which she discovered that she had been carried beyond her station. The conductor refused to do this and forced the passenger to go to the next station, and in the colloquy with the passenger, the conductor, as the record showed, sneeringly said to the passenger, ''You can sue the company.'' In the instant case, the plaintiff's testimony

112 Miss.—5

showed that she was permitted to get off and that the conductor declined to back the car, saying to her, if you want to get off you will have to get off at this point, or words to that effect; nothing that even remotely resembles an insult.

In the Lowery case there was every element requisite to constitute a case for punitive damages. Moreover in that case the instructions were in proper form and did not seek to have the jury decide the case upon an issue not made by the testimony. Moreover did not assume the existence of facts that were at issue.

*W. J. Croom, Powell & Thompson,* for appellee.

Appellant complains of the following instruction granted for appellee, to wit: "The court instructs the jury for the plaintiff that it is the duty of the defendant company to keep a lookout for signals and to stop its cars at all regular crossings on the usual signal being given, and if you believe from the evidence in this case that the agents of defendant in charge of the car in question did not stop at Euclid street when signaled so to do but carried plaintiff beyond said stop, and did not back back when requested so to do, then plaintiff is entitled to recover such damages as the jury may believe from the evidence she has suffered thereby."

On the ground that it assumes the existence of a material fact that was at issue, that is that the car was signaled to stop at Euclid street, but if the court will read the instruction carefully it will find that this instruction is not subject to this objection, for after announcing the well known law that it was the duty of the conductor to keep a look out for signals for all regular crossings, it then proceeds to say: "That if the jury believes from the evidence in this case" etc., leaving the jury to decide as to whether or not the fact had been proven. In addition the instructions for the defendant were very ample on this point, appellant further objects

to the following instruction given by the lower court, to wit:

"The court instructs the jury for the plaintiff that if in this case you believe from the evidence that plaintiff or her mother signaled the defendant's conductor in charge of the car in question to stop at Euclid street in the usual manner and that defendant's agents in charge of the car did not stop at said point but carried plaintiff beyond and refused on request, to back to Euclid street and told them to get off where they were, which place was muddy, and that the conduct of the conductor in thus refusing to back his car and forcing plaintiff to alight in the mud was characterized by insult, oppression or wilful wrong, then the jury may in addition to actual damages, if any, assess damages by way of punishment in such an amount as they may believe warranted by the evidence not to exceed the sum of $2,000."

On the ground that it permits the jury to find exemplary damages, it occurs to us that if there ever was a case in which exemplary damages ought to have been imposed, this case was one of them. The defendant's servants in charge of the car were told, when appellee boarded the car, where they wanted to stop; they were seasonably and properly signaled before arriving at the point of destination, where everything was convenient for them to alight safely without getting wet, but the conductor, disregarding all of these facts, failed to stop at the point requested, took them for half a block beyond, refused to back saying he had no time to do it, and roughly told them in a peremptory tone to get off where they were, if they were going to get off at all.

It was broad day light and the conductor could see the situation; the road had been torn up at this point, it had rained shortly before and the mud and water where they had to get off was shoe mouth deep and yet a delicate white woman and her daughter were insultingly ordered off the car in this mud and water and had to walk back for half a block in the same, there being

no sidewalk on either side which they could take because, forsooth, the conductor in charge of the car didn't want to back to their crossing and half block and lose the time necessitated to do so and which was caused by his own gross negligence. And yet it is not shown that it would not have been easy for him to have done so; it is not shown that there was any reason for his not doing so. It is not shown that the gentleman's time was very valuable, or that the business of the company could be seriously interferred with by performing this humane act.

In support of this instruction we cite the cases of *Railway, Light and Power Company* v. *Lowery,* 79 Miss. 431; *Railroad Company* v. *Moreland,* 104 Miss. 312 and *M. etc. C. R. R. Co.* v. *Whitfield,* 44 Miss. 466.

The appellant also complains that the verdict is excessive. Now if a public carrier can deal with its passengers as if they were a lot of hogs, wilfully refuse to carry out its contract, wilfully refuse to obey even its own regulations and ruthlessly and insultingly order its passengers off its cars into mud and water without any sort of an excuse, for the same, then the verdict must be excessive, otherwise, we are astounded at their moderation.

Stevens, J., delivered the opinion of the court.

Instruction No. 1, in our opinion, was erroneous in two particulars. In the first place, it assumes that the signal was properly given, and the conductor recognized or "caught" it. In the second place, it authorizes a recovery for failure to back the car "when requested so to do." The only signal given as they approached Euclid street was the signal of a little girl, nine years, old, and that signal was given by raising the hand. Neither of the witnesses for the plaintiff undertakes to say that the conductor saw the uplifted hand, or recognized it as a signal to stop. The evidence on this point was in

sharp conflict, and the instruction should not assume the existence of a material fact in issue.   This instruction also places upon a street railway the absolute duty to back its car for half a block when a passenger is carried beyond his destination.   It is unnecessary for us to say that the agents in charge of a street car should under no circumstances back the car for the purpose of allowing a passenger to disembark.   We cannot, however, say, under the facts of this case, that the car should have been backed for anything like half a block when the plaintiff and her mother could have remained on the car for the other one-half block and alighted at a proper crossing.   A street railway company owes some obligation to other passengers on board as well as the complaining party negligently carried beyond her destination, and certainly owes to the traveling public the duty of operating its cars on schedule time.   If the plaintiff in this case desired to avoid the mud and water so freely and manifestly existing in the middle of the block at that time, it was more reasonable under such circumstances to go to the next corner and alight in a safer place, although compelled to walk a half block further on their trip home.   But, conceding the negligence of appellant in carrying the plaintiff beyond her destination, the damages resulting from such negligence were practically, if not altogether, nominal; and this brings us to a consideration of the next instruction complained of, authorizing the jury to award exemplary damages.

The granting of this instruction constituted error.   By it the jury is told that if the conduct of the conductor in refusing to back the car was characterized by insult, oppression, or willful wrong, the jury might allow damages by way of punishment.   The language employed by the conductor, taken most favorably for the plaintiff, amounted to nothing more than brusqueness.   The language employed could not be characterized as insulting. It was held by this court in the case of *Miss. & Tenn. R. R. Co.* v. *Gill,* 66 Miss. 39, 5 So. 393, that:

"Brusqueness on the part of a railroad conductor is not an insult for which his employers are to be punished where it amounts to no more than appears" in that record.

And again:

". . . Mere brusqueness of the agent, not amountting to insult, is not ground, in law, for the infliction of punitive damages against his principal." *Railroad Co.* v. *Machine Co.,* 71 Miss. 663, 16 So. 252.

It has been expressly held, in reference to the operation of a railroad passenger train, that a refusal to back the train and allow the passenger to alight at the proper place does not—

"constitute willfullness so as to authorize the imposition of punitive damage. . . . In considering the right of one, all others are not to be forgotten. Each passenger has a right to reasonably expect that the train will be run on schedule time; each passenger may make his business arrangements predicated of that idea. The safe handling of the train may depend upon its schedule. . . . Shall these considerations of public importance all be brushed aside at the instance of one passenger whom the carrier has negligently carried by his proper destination? . . . In such case, the infliction of punitive damages would impede, and not promote, the public good." *Yazoo, etc., R. Co.* v. *Hardie,* 100 Miss. 132, 55 So. 42, 967, 34 L. R. A. (N. S.) 740, 742, Ann. Cas. 1914A, 323.

We recognize the fact, of course, that these observations were made with reference to the operation of steam railways, but the same principle, in our judgment, largely applies in the instant case. Can it be said to be the absolute duty of the employees operating a street car loaded with passengers to back for half a block simply to allow one passenger to alight, and that upon refusal to back, the company subjects itself to liability for exemplary damages? Will the allowance of exemplary damages in such instance promote the public good? We

are not, of course, speaking about the right to recover punitive damages for a willful or wanton disregard of plaintiff's rights, or for an insult on the part of the employee. There is no such case presented by this record. There is no showing that the conductor willfully or consciously carried the passenger beyond her destination; and the language employed when the passenger alighted is not sufficient to constitute an insult. The only point then on which plaintiff can rely for an award of punitive damages is the alleged willful refusal to back the car. The facts of this case, at best, simply show an act of simple negligence, and gross negligence cannot be built up by the addition of two acts of simple negligence; that is to say, the negligence of appellant in first carrying the passenger beyond her station, and next, the negligence in depositing the passenger at a muddy or unsafe place.

Counsel for appellee rely upon the case of *Railway L. & P. Co.* v. *Lowry,* 79 Miss. 431, 30 So. 634. The Lowry Case is materially different from the present case. In the former case the proof showed that Robert Lowry, a distinguished citizen of Jackson, signaled a car at its regular stopping place at the intersection of Yazoo and State streets, where there was but one pavement or crossing on which a passenger could walk without plunging into the mud; that Governor Lowry carried a heavy satchel; that the night was dark and stormy; that he duly signaled the car to stop; that the motorman saw and well understood the signal, but negligently ran his car some twenty or more feet beyond the crossing and into a very muddy place; that the conductor and Governor Lowry got into a dispute as to whether Governor Lowry should walk around the car in the mud to embark, or whether the conductor would back to the proper crossing; that the conductor willfully and arbitrarily refused to back a short distance and allow the passenger in that case to embark, but went on, leaving the passenger standing on the strip of brick pavement

which constituted the only safe and proper walking ground from which a passenger could embark at that point. Robert Lowry was a citizen in public life and well known to the employees of the railway company, and, notwithstanding the fact that the motorman saw him and understood the signal, he not only ran his car beyond and into the mud, but willfully and arbitrarily refused to back a short distance, finally deciding to leave the passenger standing where he was, and thereby requiring him to walk a long distance home on a stormy night. The facts are totally different. The passenger in that case had to be taken aboard at that crossing or left altogether. The present case involves only the simple negligence of the company in failing to deposit the passenger at the proper corner or crossing.

There being no willful or wanton wrong or such gross negligence as imputes a willful disregard of plaintiff's rights, the infliction of punitive damages constitutes error, which would necessitate a reversal of this case, aside from any other error assigned or relied upon.

*Reversed and remanded.*


Cook, P. J., and Potter, J. (dissenting). We are not prepared to say that the court has erred in reversing this case. It is probable that the instructions given for the plaintiff constituted error, for which the case should be reversed. We do not think that the opinion of the court correctly states the rule, and we are unable to distinguish this case from *Railway Co.* v. *Lowry,* 79 Miss. 431, 30 So. 634. True Governor Lowry was a distinguished citizen, and the plaintiff in this case was not, but it is also true that the evidence in this case for the plaintiff warranted the belief that the conductor stubbornly and for no reason at all refused to back the car to the crossing.

The evidence for plaintiff shows that the conductor negligently refused to stop when signaled—and then, for

no conceivable reason, declined to make amends for his wrong.

Under the circumstances, deducible from plaintiff's evidence, the failure to back the car was a wanton disregard of a duty owing to the plaintiff.