LOUISVILLE & N. R. Co. *v.* BLAIR.

(Division B.   Sept. 30, 1929.)

[123 So. 859.   No. 27989.]

*Smiths, Young & Johnston,* of Mobile, Ala., for appellant.

*Ford, White, Graham & Gautier,* of Gulfport, for appellees.

Argued orally by *Harry H. Smiths,* for appellant.

ANDERSON, J., delivered the opinion of the court.

Appellee brought this action in the circuit court of Jackson county to recover of appellant damages, both actual and punitive, for an injury claimed to have been suffered by her through the negligence of appellant in selling her a ticket for passage over its road from Pascagoula, in this state, to Brewton, in the state of Alabama, on appellant's passenger train No. 134, and requiring her, because the train on which she was being carried did not stop at her destination, to disembark from

said train in the nighttime at Flomaton, Alabama, an intermediate station, and remain there in the appellant's depot about four hours, awaiting appellant's next passenger train which stopped at her destination. Appellee recovered a judgment in the sum of one thousand five hundred dollars, from which appellant prosecutes this appeal.

The case made by the evidence on behalf of appellee was substantially as follows:

Appellee's mother and father lived about ten miles in the country from Brewton, in Alabama. Appellee received a telegram from her mother, advising her that her father had died, and to come to Brewton. Appellee and her three-year-old child, accompanied by her brother-in-law, went to appellant's station in Pascagoula about six o'clock in the afternoon, and purchased from appellant's agent there a ticket for herself and child from Pascagoula to Brewton on appellant's train No. 134. Appellant's agent, selling the ticket, told appellee and her brother-in-law, according to their testimony, that train No. 134 stopped at her destination. The train soon arrived; she presented her ticket to the conductor in charge, who permitted her, with her child, to enter the train as a passenger. Shortly after the train pulled out from Pascagoula, the conductor took up appellee's ticket, punched it, and handed it back to her. The conductor said nothing as to whether the train she was on stopped at her destination or not. When the train reached Mobile, Alabama, which is a division point, another conductor took charge of the train. When he took up appellee's ticket, he stated to her that the train she was on did not stop at Brewton. She replied that the ticket agent at Pascagoula had said that it did stop there. The conductor said, "I am telling you it don't stop, and you will have to get off at Flomaton." Appellee testified that the conductor talked "like he was mad;" that it seemed to do the conductor good to put her off the train at

Flomaton. She said some passengers near by overheard the conversation between the conductor and herself. When the train reached Flomaton, appellee, without asking assistance of any of the train crew, carried her three-year-old child, who was asleep, and a heavy suitcase, out of the train, and to appellant's depot, about one hundred fifty feet from where she disembarked.. There she remained for about four hours, until the arrival of appellant's next passenger train, No. 2, which stopped regularly at Brewton, on which she embarked.

Flomaton is about eighteen miles from Brewton. If appellee had continued on train 134, she would have arrived at Brewton about twelve-thirty at night; instead, she arrived at Brewton about daylight on train No. 2, which is the first train she could have taken from Pascagoula if appellant's agent at the latter place had not made a mistake in telling her that train one hundred thirty-four stopped at Brewton. Brewton was only about twenty minutes run from Flomaton. Appellant had notified no one to meet her at her destination, and she was met there by no one. Therefore, there was the same necessity (if necessity there was) for her, in disembarking at Brewton, to carry the child in her arms, and her suitcase in her hand, as there was at Flomaton.

Appellee testified that she was embarrassed and humiliated because two men overheard the conductor tell her that train No. 134 did not stop at Brewton, and that she would have to get off at Flomaton; that the conductor made this statement to her "like he was mad" and it did him good to do so.

Appellee's three-year-old child weighed forty-two pounds. She testified that she gave birth to a child about a month before, which was stillborn, and that she had entirely recovered from that; but the effort and strain of carrying her suitcase and her sleeping three-year-old child off of train 134 at Flomaton to the appellant's depot about one hundred fifty feet from the train, and

the night wait of about four hours at that place for train No. 2, and the worry and inconvenience resulting therefrom, caused her to flood and become sick, and to suffer great pain for several weeks thereafter. She testified that she carried her child at Flomaton, instead of letting it walk, because it was asleep; and testified further: "I didn't have to carry him anywhere. I carried him to the depot and stayed there."

Appellee made no claim that she advised the conductor in charge of train 134 of her recent illness and delicate condition. She testified that she suffered great pain in getting on train No. 2 when it arrived, caused by carrying the child.

Appellant offered evidence, which was ruled out by the court over appellee's objection, to the effect that its agent at Pascagoula was authorized, under appellant's rules, to sell tickets from Pascagoula to Brewton, that passengers holding such tickets could ride on that train to any intermediate point at which it stopped, and then on appellant's train stopping at Brewton.

Appellant's agent at Pascagoula testified in the case. His evidence and that of appellee and her brother-in-law were squarely in conflict. He testified that he told neither of them that the ticket he was selling appellee for train 134 gave her the right to travel on that train to Brewton.

Appellant assigns and argues as error the action of the court in refusing its request for an instruction to the jury that they could not award appellee punitive damages. Taking every material fact favorable to appellee's case as established by the evidence, either directly or by reasonable inference, we are unable to see any element of willfulness, wantonness, or gross negligence on the part of appellants in selling appellee a ticket on train 134, instead of on train No. 2, which arrived about four hours later; or in the conduct toward, or treatment of, appellee by the conductor in charge of that train. The

wrongs suffered by appellee at the hands of appellant's employees, at most, were the result of mere oversight—simple negligence on the part of such employees. There is no evidence whatever tending to show that either the agent at Pascagoula, or the conductor in charge of train 134, had any intention of doing appellee a wrong.

In the case of *Jackson Light & Traction Co.* v. *Taylor*, 112 Miss. 60, 72 So. 856, the motorman in charge of the street car on which plaintiff was traveling said to the plaintiff, "No, you will get off right here." Plaintiff testified that this language was used in a rough and offensive manner. The court said that: "The language employed by the conductor, taken most favorably for the plaintiff, amounted to nothing more than brusqueness. The language employed could not be characterized as insulting."

In the case of *New Orleans & N. E. R. Co.* v. *Martin*, 140 Miss. 410, 105 So. 864, the plaintiff asked the conductor to stop the train and let her off; the conductor replied that the plaintiff would have to go on to Hattiesburg, the next stop, and pay her fare to that station, which she did. The plaintiff testified that the manner of the conductor was offensive and insulting. The court held that it was not a case for punitive damages.

Appellee contends, however, that appellant is not in a position to take advantage of the error of the court, if it was an error, in refusing appellant's instruction excluding punitive damages from the consideration of the jury, because after the instruction was refused by the court, appellant obtained from the court an instruction defining in what character of case the jury would be authorized to award punitive damages. We think appellee's contention in that respect is without merit. If it were sound, it would mean that where either party to a cause had been refused a peremptory instruction, he would be barred from taking advantage of the error

of the court in refusing such an instruction if he asked any other instruction in the case.

Appellant assigns as error the action of the court in granting appellee the following instruction: "The court charges the jury at the instance of the plaintiff that·even though you believe from the evidence that plaintiff did not object or remonstrate with defendant's conductor when told to get off its said train at Flomaton, yet if you believe from the evidence that plaintiff got off of ʻsaid train because she was told to do so by said conductor, then you should by your verdict fully compensate said plaintiff for the damage suffered or endured by her, if any, if you further believe from the evidence that she was informed by the conductor at Pascagoula that her ticket was good to Brewton on train No. 134."

Appellant's criticism of this instruction is that it permitted the jury to award appellee damages for *all injuries* suffered by her, however remote, as the result of selling her a ticket, and accepting her as a passenger on a train which did not stop at her destination. We think appellant's criticism of the instruction is well founded; that it was calculated to mislead the jury. Under the law, appellee's injuries and. suffering must have been the proximate result of appellant's negligence. Stating it the other way, appellant's negligence must have been the proximate cause of appellee's injuries and suffering. A wrongdoer is not liable for *all* the injuries that flow from his wrongful act, but only for such as could have been reasonably foreseen. The injuries suffered must have been the natural and reasonable result of the wrongful act. *Leek Milling Co.* v. *Langford,* 81 Miss. 728, 33 So. 493; *L. & N. R. Co.* v. *McArthur,* 137 Miss. 780, 102 So. 842.

Under this instruction the jury was authorized to award appellee damages for all the suffering she endured on the trip and afterwards, regardless of whether such

suffering was the proximate result of appellant's negligence.

Over appellant's objection the court permitted appellee to testify that as the result of disembarking from appellant's train at Flomaton, and carrying out in her arms her forty-two pound child while asleep, and her suitcase, and walking one hundred fifty feet to the station at Flomaton, and there remaining four hours, in her weakened condition, which was not brought to appellant's attention, caused appellee to flood and to suffer pain and sickness for several weeks. We are of opinion that the court erred in admitting that evidence, because such suffering was not the proximate result of appellant's negligence; it was a happening that no reasonable mind could have foreseen. In the *McArthur case, supra,* the court said that the damages for which the plaintiff was entitled to recover were only such as proximately resulted from the plaintiff being forced to disembark from the train at Pass Christian, and wait there for the next train to Long Beach; and the jury were not authorized to include therein any damages sustained by the plaintiff because of his trip to Long Beach in an automobile.

Appellee, under the evidence in this case, was only entitled to recover for the inconvenience and physical discomfort suffered by her on account of being required to disembark at Flomaton in the nighttime, and there remain for four hours, awaiting the next train to her destination.

*Reversed and remanded.*