## MOBILE & OHIO R. CO. *v.* FARRIOR.

### [75 South. 777, Division A.]

1. CARRIERS. *Carriage of passengers. Conduct of conductor. Sufficiency of evidence.*

    In a suit by a passenger against a railroad company and its conductor for actual and punitive damages, because of the conductor's conduct in insisting that plaintiff had not purchased a ticket to her destination, the court held that the facts set out in its opinion did not show that the conductor failed to treat plaintiff with proper courtesy, and plaintiff failed to make out a case for punitive damages.

2. NEW TRIAL. *Jury. Impeachment of verdict.*

    Notwithstanding the facts that now nine jurors are permitted to render a verdict in a civil case, this does not change the rule that a juror is not allowed to impeach the verdict of the jury, since the verdict is still the verdict of the whole jury though it takes only nine jurors to arrive thereat.

APPEAL from the circuit court. of Lauderdale county. HON. R. M. HEIDELBURG, Judge.

Suit by Mrs. Ether Farrior against the Mobile & Ohio Railroad Company and another. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Baskin & Wilbourn,* for appellant.

*Fewell & Cameron,* for appellee.

SYKES, J., delivered the opinion of the court.

The appellee, Mrs. Farrior, instituted suit against the Mobile & Ohio Railroad Company in the circuit court of Lauderdale county for actual and punitory damages based upon the following facts as testified to by the plaintiff in the court below:

Mrs. Farrior testified that she had been to West Point, Miss., with her husband, and that on her way to the station with him he gave her two dollars and ninety-five cents with which to purchase a ticket from West Point to Meridian; that she told the ticket agent at West Point to sell her a ticket to Meridian. He told her the price was two dollars and ninety-three cents. She gave him two dollars and ninety-five cents and he returned three cents in change. Her husband, also gave her five cents to buy, as she said, a "dope" on the train. The three cents and five cents she deposited in her suit case. She boarded the train for Meridian, and nothing transpired until it reached the town of Macon. We now quote the testimony of Mrs. Farrior:

"The train stopped, and the flagman came through and called out Macon, and nobody didn't get off, and then I believe Mr. Sweatman came in as far as the door and hollered, 'Macon,' and I happened to look up, and he was looking at me. I turned around behind me to see if there was anybody back there. I says: 'Are you looking at

115 Miss.—7

me?' He says: 'Yes; are you going to get off?' I said: 'No; I bought a ticket to Meridian.' He says: 'What did you pay for the ticket?' I said: 'I paid two dollars and ninety-five cents for it.' He said: 'That is the fare all right, but you didn't pay that.' I said: 'Yes; I did.' He says: 'What is your name?' I said: 'When I bought a ticket I didn't have to give my name.' He says: 'Well, you didn't buy a ticket to Meridian; I will wire the agent at West Point.' So, with that, he walked on out, and in a few minutes he came back, and he was very excited, and said: 'The ticket agent at West Point says you didn't buy a ticket.' I says: 'He must be mistaken; I did.' He says: 'The train has been delayed longer than it ought to be; we have to go, and you will have to get off.' I says: 'No, sir; I am not going to get off, because I don't know anybody in Macon, and besides I have no money to pay my expenses.' He says: 'I will go out and wire the superintendent and see what he says.' And he went on, and he came back and says: 'Have the marshal of the town take you off.' And with that I felt very embarrassed and started to crying. He said something. He didn't come to my seat, but stood way up in the aisle. I told him that my father worked for the Mobile & Ohio Railroad Company, and he was going to meet me at the train and he would pay my fare, and he wouldn't do that. He says: 'Give me that suit case and I will hold it for your fare.' I didn't say anything. He says: 'Are you going to give me that suit case?' I said: 'There it is.' And he took the suit case and handed it to the flagman, and he took out a piece of paper and wrote something on it, but I didn't take it; it dropped on the floor. After he went out I picked it up. Well, there was nothing more done about it then, and in a few minutes—well, there was two or three men said—Mr. Breland said before he would see Mr. Sweatman put me off he would pay my fare. Then Mr. Sweatman carried the suit case out, and in a few minutes Mr. Sweatman came back with a note

saying that some Mr. Ellis wrote on the note and said he had paid my fare and I could get my suit case and he would be at the Meridian Hotel for a week, and if I wanted to pay him back it was all right. I told Mr. Sweatman I didn't want him to bother me any more, that I had paid my fare, and didn't intend to pay it any more, but in a few minutes the man himself came and says: 'Lady, I have paid your fare, and you can get your suit case.' I says: 'I have paid my fare.' And he went off and laughed as he went off, and that was all that was done then.''

At another place in her testimony she stated that the conductor said that the ticket agent at West Point wired him that he had not sold any tickets to Meridian at all. The piece of paper given the plaintiff was a cash fare receipt for fare from Macon to Meridian. Her suit case was left in the office of the ticket agent at Meridian. Several days after reaching Meridian Mrs. Farrior went to the station, in company with her attorney, and was given her suit case, but did not pay the cash fare from Macon to Meridian. She also testified that she was embarrassed on account of the conversation with the conductor. Several other witnesses who heard parts of the conversation, and who testified on behalf of plaintiff, said that the conductor was not rude or insulting in his manner toward her. The uncontradicted testimony further shows that the conductor wired to the ticket agent at West Point and asked him if he sold a ticket to Meridian for that train, and that the agent replied that he had not. It also shows that the conductor wired the superintendent to know what he should do under the circumstances, and that he delayed the train in Macon ten minutes in trying to get this matter properly settled. The concluding paragraph in the declaration is as follows:

''Plaintiff alleges that by reason of the foregoing acts of willful, wanton, and gross negligence and abuse and grossly insulting conduct towards her on the part of the

conductor that she was damaged, and therefore she sues and demands judgment against the defendants, the Mobile & Ohio Railroad Company and Dan Sweatman, both for actual and punitive damages in the sum of twenty-five thousand dollars.''

The jury returned a verdict in favor of the plaintiff for the sum of three hundred and eleven dollars, upon which judgment was duly entered, and from which judgment this appeal is prosecuted.

The question of punitive damages was submitted to the jury. The uncontradicted testimony further shows that the plaintiff did not examine her ticket when she purchased it, and, as a matter of fact, did not know whether the agent had given her a ticket to Meridian or to Macon. It further shows that, as a matter fact, the ticket given to the conductor by her was one to Macon. If a mistake was made in the ticket, it was made by the ticket agent in West Point, and not by the conductor. After she explained to the conductor her version of the matter, the conductor did all that he could have done to ascertain whether or not there was a mistake. He wired the agent at West Point, and was told by him that no mistake had been made. He then wired the superintendent of the railroad company for instructions. All the other witnesses in the case testify that his manner was in no way insulting, rude, or abusive. As to exactly what was said by the conductor and Mrs. Farrior, there is some contradiction, but the verdict of the jury has resolved these facts in her favor.

Taking her testimony, we unhesitatingly say that there is nothing from which it can be inferred that the conductor did not treat her with sufficient courtesy. We therefore conclude that punitive damages could not be recovered in the case.

Another question which is raised by the appellant railroad company, and which is of first impression in this court under the new law allowing nine jurors to return a

.verdict, is this: It seems that this was a verdict rendered by nine jurors. One of the three jurors who did not agree to it was presented as a witness to impeach the verdict of the jury and to testify that the same was arrived at by adding up the various amounts suggested by each of the nine jurors, dividing the sum by nine, and the verdict was the quotient thereby obtained; in other words, that is what is known in common parlance as a "chance" verdict. This court has uniformly held, under the unanimous verdict rule, that a juror is not allowed to impeach the verdict of his jury. The same reasons apply with equal force now as applied then. The verdict is still the verdict of the jury as a whole, though it takes only nine jurors to arrive thereat. The lower court was therefore correct in excluding this testimony.

*Reversed and remanded.*