HARDY v. TURNER-FARBER-LOVE Co., INC.*

(Division A.   Oct. 20, 1924.)

[101 So. 489.   No. 24290.]

1. MASTER AND SERVANT. *Failure to furnish oiler safe place to work held jury question.*

In action for death of oiler of sawmill machinery, whether employer had sanctioned dangerous method of oiling machinery, so as to be liable, on theory that he failed to furnish oiler safe place to work, *held* for jury.

2. NEGLIGENCE. *Contributory negligence goes only to diminish damages.*

Contributory negligence of servant goes only to diminish damages.

3. MASTER AND SERVANT. *Employee assumes only ordinary hazards.*

Employee assumes only such risks as are ordinary hazards of employment.

4. MASTER AND SERVANT. *Employer who acquiesced in dangerous method of work liable for employee's death.*

Employer who knows that an employee habitually oiled machinery from within compartment surrounding machinery, instead of from outside of compartment, but acquiesces therein for a long period of time, is liable for employee's death, on theory that he failed to furnish him a safe place in which to work.

*Headnotes 1.  Master and Servant, 26 Cyc, p. 1463;  2.  Master and Servant, 26 Cyc, p. 1231;  3.  Master and Servant, 26 Cyc, p. 1177; 4.  Master and Servant, 26 Cyc, p. 1113.

APPEAL from circuit court of Washington county.
HON. S. F. DAVIS, Judge.

Suit by Beulah Hardy against the Turner-Farber-Love Company, Inc.  Judgment for defendant, and plaintiff appeals.  Reversed and remanded.

*Bell & White,* for appellant.

There is but one point in this case.  Did the act of the defendant in permitting, through successive years, its

servants to use this dangerous place for oiling, recognized by every one as being dangerous, neglect its duty towards these ignorant negroes? If so, the question of the damage should have been submitted to the jury. Furthermore, the question should have been submitted to the jury as to whether or not, under the facts, the defendant had been negligent, even though the neglect of the deceased in choosing an unsafe method contributed to the injury.

In support of our position, we submit the following authorities: *Sea Food Co.* v. *Alves,* 117 Miss. 1, which we submit decides the instant case: *I. C. R. R. Co.* v. *Skinner's Adm'x.,* 197 S. W. 552; *L. & N. R. R. Co.* v. *Payne's Adm'r.,* 197 S. W. 928; *Larkin* v. *New York Telephone Co.,* 114 N. E. 1043; *Whitaker* v. *D. & H. Canal Co.,* 27 N. E. 1043; *Broadfoot* v. *Shreveport Cotton Oil Co.,* 35 So. 643; *St. Louis, I. M. & S. Ry. Co.* v. *Schultz,* 171 S. W. 876; *Merrill* v. *Oregon Short Line R. Co.,* 81 Pa. 85; *Terrell* v. *City of Washington,* 73 S. E. 888.

From the foregoing authorities we submit that appellant's position is correct, that this case should have been submitted to the jury under proper instructions, that the question as to whether or not the master could have known of the dangerous method of oiling by reasonable care and diligence should have been submitted to the jury as well as the question as to whether the deceased contributed by carelessness to the injury, and, therefore, diminished the damages.

The testimony shows that this darkey, if ever warned at all of the danger of his method, or if advised as to how to properly perform his duties, received such warning, or advice, seven years before this accident; that his helper and successor never received it; that for seven years he performed this dangerous work several times a day with the shining, flying band of death right at him, with fellow employees all seeing him, with ample opportunity for his employer to observe what he was doing, and never a step taken to stop him, or safeguard his work

at that time. The door to the compartment could have been locked with a twenty-five cent padlock; a fifty cent piece of pipe could have been put in from the outside to conduct the oil to the pulley and a human life safeguarded, but none of this was done. Even if it were feasible to crowd in between the compartment wall and the sawyer, we all know that no darkey is going to do that, when the sawyer is a white man, if it can possibly be avoided. We do not believe that the duty of the master was discharged by giving instructions seven years before, granting for the sake of argument that it was given, followed by seven years of neglect and acquiescence.

*Boddie & Farish,* for appellee.

Counsel for appellant have expended much unnecessary time and labor in the citation of authorities to show that the master is required to furnish safe means and appliances for the servant to do his work with. That is elementary; but the question is, did this appellee comply with that duty? There is not a particle of evidence in the case to show that the master failed in that duty, but on the contrary, all of the witnesses testified that there was a safe place provided and that the decedent had used that place to oil the machinery, knew that it was safe, and knew that it was very dangerous to go into the little room or behind the partition to do his work. What else should appellee have done to protect this adult employee of seven years' experience? Should they have had a man stand there with a club to keep him from going into it? See 18 R. C. L. 565. The master cannot be held liable where an employee in utter disregard of his own safety, and in disobedience of repeated instructions and warnings by the master, voluntarily goes into a place of known danger and is injured.

Argued orally by *Percy Bell,* for appellant.

HOLDEN, J., delivered the opinion of the court.

The appellant, Beulah Hardy, sued the appellee, lumber company, for damages for the death of her husband, Oliver Hardy, who was killed by a band saw in the sawmill of appellee, while employed as an oiler of the machinery. The lower court granted a peremptory instruction against liability, from which judgment this appeal is prosecuted.

The main ground for recovery is that the lumber company failed to furnish a reasonably safe place for its employee, Oliver Hardy, deceased, to work in, which negligence resulted in his death. The principal and successful defense of the lumber company was upon the theory that the deceased was furnished a reasonably safe place in which to work, in oiling the machinery of the sawmill, and that his injury resulted from his voluntarily selecting a known dangerous method by which to perform the service of oiling, and which the master had warned him against several times, and that therefore no negligence was shown on the part of appellee.

The salient facts of the case are these. The appellee, lumber company, operated a sawmill, in which it used a band saw, that ran over pulleys, to saw lumber. It was necessary to oil the pulleys several times each day, and the deceased, Oliver Hardy, husband of appellant, was employed to oil the pulleys. He had been performing this service for about seven years, about six or eight times daily, before he was killed by the saw slipping and cutting him in two, while he was attempting to oil the pulleys.

We do not find the record as clear, with regard to the location of the band saw and the conditions concerning and surrounding it, as we would like, but we are able to understand the situation well enough to decide the case. It seems that, at the point where the band saw was operated by the sawyer, there was a compartment surround-

ing the band saw which had a door at the back of it, and it had been the custom of the deceased to enter this compartment and oil the lower pulley, which was the most convenient way, instead of oiling it by going on the outside and edging in between the compartment and the sawyer in a sixteen-inch space, and there reaching around one of the walls of the compartment and oiling the pulleys. The first method was dangerous because of the likelihood of the band saw flying off and killing a person while oiling the pulleys; the second method was a reasonably safe way to oil the pulleys, though inconvenient and disagreeable to the operating sawyer for the negro oiler to squeeze between him and the wall to oil the pulley.

The evidence in the record shows that the deceased adopted, and habitually used, the convenient method of going into the compartment and oiling the pulleys from that point for several years before his death. The use of this last method by the deceased must have been known to the employer or the manager in charge of the operation of the plant. It was also shown that the deceased, some years before his death, was warned against the danger of oiling the pulleys by going into the compartment, and that he was, one one occasion, pulled out of this compartment and told to use the other method of oiling, by going between the sawyer and the wall on the outside of the compartment, which was the safe way to do the oiling.

The appellee contends that, because the deceased was instructed to use the safe way of oiling and was warned against the use of the dangerous way several years before he met his death, no recovery can be had, since there was no negligence on the part of the appellee by failing to furnish the servant a reasonably safe place in which to work. The opposite contention of appellant is that, notwithstanding there was a safe method offered the deceased and that he was warned against the dangerous method several years previous, yet the employer was negligent in furnishing and permitting the servant for many years to use the most convenient and dangerous

method of oiling the pulleys, and that the employer acquiesced in the use of the dangerous method by the deceased, which method had become customary and the only one used by the deceased for oiling the pulleys.

We think the testimony is conflicting as to whether the employer had furnished the servant a safe place to work, and the question should have been submitted to the jury, for the reason that, while the testimony of the witnesses for the appellee showed that the deceased was warned of the danger of oiling from within the compartment, and was instructed to use the safe way between the sawyer and the wall, yet the proof offered by appellant, and the reasonable inferences to be drawn therefrom, in favor of the plaintiff, against whom a peremptory instruction was granted, disclose that the deceased was permitted to use the dangerous way daily for many years, and that this method alone had been used by him, with the knowledge and long acquiescence of the employer, so as to become a custom; and therefore, viewing the place of work as a whole, where either one of the two ways of oiling the pulleys could be used by the servant, and he habitually, with the knowledge and approval of the master, used the dangerous one and was injured thereby, the employer was negligent in furnishing an unsafe place to work. Contributory negligence of the servant would only go to diminish damages, and the assumption of risk is abolished, except as to the ordinary hazards of the employment; and a recovery is maintainable if the employer is guilty of the negligence charged.

It seems that the warning of the danger given the deceased and the instruction to him to use the safe method were given him about six years before the date of the injury, and all during the time since, while the deceased oiled the pulleys several times each day by using the dangerous way, there was no objection by the employer, but by his conduct he approved the use of the dangerous way, which was more convenient and agreeable to the deceased and to the white sawyer, which, in effect, was the furnish-

ing of a dangerous place to the servant in which to perform his work, if the jury so believe.

It is a question of fact for a jury, from all the facts and circumstances, as to whether or not the employer intended that the deceased should have used the safe method or used the dangerous method; there being a conflict in the evidence in this respect, viewing all the facts and circumstances together. It appears that the sawyer would have had to slow down his machinery and become interrupted in his operation of the band saw whenever the deceased would undertake to do the oiling from the outside of the compartment between its wall and the sawyer. To do the oiling on the inside of the compartment was easier and more convenient and agreeable to all concerned. The door to the compartment through which the deceased habitually passed to oil the pulleys was always open, and, while the employer disputes the fact by several witnesses, nevertheless, it is a question for the jury as to whether or not, under these circumstances, he did not impliedly sanction and approve the use of the dangerous way, and, if he thus provided an unsafe way and means of performing the service which resulted in injury, he is liable for damages.

In view of the above conclusions, the judgment of the lower court is reversed, and the case remanded for a new trial.

*Reversed and remanded.*