New Orleans & N. E. R. Co. *v.* Martin.*

(Division B. Nov. 16, 1925.)

[105 So. 864.   No. 25099.]

1. TRIAL.   *On motion for directed verdict, evidence to be considered most favorably for other party.*

   On motion of defendant for directed verdict, the evidence is to be considered most favorably for plaintiff, and, if so considered it tends to establish his case, it is for the jury.

2. CARRIERS.   *No breach of duty to passenger in not opening door of car at station not her announced destination.*

   There was no breach of duty owing by carrier to passenger riding in special car in not opening its vestibule door at a station which was not her destination, according to her ticket; she having given no notice of change of destination.

3. CARRIERS.   *No duty to back train to allow passenger to alight at station passed.*

   Carrier, on being informed for the first time after passing a station that a passenger, though having ticket for another station, desired to get off at the station passed, was under no duty to back the train to the station.

4. CARRIERS.   *Case for punitive damages not made by testimony as to manner of conductor.*

   Testimony of passenger that, when conductor refused to back train to station passed, "his manner was insulting and offensive," *held* not to make case for punitive damages.

---

*Headnotes 1.   Trial, 38 Cyc., p. 1565; 2. Carriers, 10 C. J., Section 1264; 3. Carriers, 10 C. J., Section 1266; 4. Carriers, 10 C. J., Section 1397.

APPEAL from circuit court of Jones county.

HON. W. L. CRANFORD, Judge.

Action by Mrs. J. R. Martin against the New Orleans & Northeastern Railroad Company.   Judgment for plaintiff, and defendant appeals.   Reversed and judgment rendered.

*Bozeman & Cameron,* for appellant.

I. *As to liability of defendant for carrying plaintiff by Ellisville.* This liability, if any, was necessarily based upon negligence of the defendant, or its train crew. In the particular case the negligence consisted, if at all, not in the failure to call, or announce, the station of Ellisville in the special car where plaintiff was riding; because the plaintiff knew when she reached the station of Ellisville and went to the door of the car to get off. The negligence complained of was the failure to have the door of the special coach open at Ellisville, so that the plaintiff could get off the car. The court instructed the jury in this regard, ''That it is the duty of the railroad companies carrying passengers to call out all stations for passengers where the train regularly stops, and open up the doors of the train and give passengers an opportunity to get off.'' This may be true in a general way, and as applied to passengers generally; but it is an erroneous statement of the law as applied to the plaintiff in this case.

Remembering the undisputed facts, (a) that plaintiff was riding in a special coach assigned and limited, as she knew, to returning delegates from the Eastern Star convention, and not for the use of passengers generally, and (b) that plaintiff had a ticket to Laurel, which she surrendered to the conductor on leaving Meridian, and (c) that she did not inform the conductor or any of the train crew at any other time, that she intended to go to Ellisville, and not to Laurel, we submit that the contract of the defendant was to carry the plaintiff to Laurel, and not to Ellisville; and the only duty which the defendant owed to the plaintiff in this regard was to announce the station of Laurel, and to afford the plaintiff the reasonable opportunity to get off the train at Laurel, the station to which the defendant contracted to carry her. The plaintiff herself testifies that this duty was performed.

The plaintiff below argued that the train crew ought to have known that she did not get off the train at Laurel. There is no proof that either the conductor or flagman knew that plaintiff did not get off at Laurel. The train

crew were under no duty to check up the coach at Laurel and to know whether the plaintiff had gotten off at Laurel or not.  4 R. C. L., sec. 538, page 1089 and note 11.  Their only duty was to announce the station of Laurel and give plaintiff *a reasonable opportunity* to get off.  *Southern R. Co.* v. *Kendrick,* 40 Miss. 374 at 384; *N. O., etc., R. R. Co.* v. *Statham,* 42 Miss. 607; *Sevier* v. *Vicksburg R. R. Co.,* 61 Miss. 8.  In accordance with these announcements of the law, the defendant performed its full duty to plaintiff below when the train crew announced the station of *Laurel,* her destination, and gave her a reasonable opportunity to leave the train *there.*

II.  *As to alleged insult.*  The court erred in instructing the jury, "If you further believe from a preponderance of the testimony in this case that the conductor on the train in question was insulting or insolent in his manner, or attitude toward her (the plaintiff), then the jury may award punitive damages in addition to actual damages, if any." There is no evidence in the record which warranted the court in submitting the question of insult to the jury.  It is true that the plaintiff testified that the conductor was "very discourteous and insulting about it, and refused to put me off," and that the conductor "in a very insulting way, demanded my fare;" but on cross-examination this witness repeated the words of the conductor and the entire conversation, and all that the conductor said was this; When asked to stop the train, he said, "I can't stop the train," and further, "I," meaning the plaintiff, "would have to pay my fare to Hattiesburg."  Plaintiff was asked.  Q.  "That was the whole conversation between you and the conductor?"  A.  "That was all."  For leading case on this question see: *Miss. & Tenn. R. Co.* v. *Gill,* 66 Miss. 39; *K. C. M. & V. R. Co.* v. *Fite,* 67 Miss. 373; *A. & V. Railway Co.* v. *Lowry,* 100 Miss. 860; *Light Co.* v. *Taylor,* 112 Miss. 60; *M. & O. R. Co.* v. *Farrior,* 115 Miss. 96.

On the authority of these cases we submit that on the plaintiff's own testimony the court erred in submitting

the question of punitive damages to the jury and erred in refusing to instruct the jury at the request of the defendant that plaintiff was not entitled to recover any damages in this case on account of any insulting language or conduct on the part of the conductor.

*Jeff Collins,* for appellee.

It is necessary to determine whether or not Mrs. Martin was a passenger on the defendant's train to Ellisville. If she was a passenger then the failure of the defendant to open the door and afford her an opportunity to get off was negligence. Mrs. Martin was either a passenger or she was not a passenger. There is no middle ground. It is not the rule of this defendant and was not shown to be the rule of this defendant that persons must, before boarding its trains, purchase tickets in order to become passengers. Therefore, if a person boards the train of the defendant intending, when asked to pay the fare he becomes a passenger. 4 R. C. L., page 1028, sec. 487; 4 R. C. L. page 1032, sec. 490; 4 R. C. L., sec. 47; 6 Cyc., page 537, sec. b (11); *St. L. & S. F. R. Co.* v. *Sanderson,* 54 So. 885.

As we take it from the facts in this case and from the law of this case, there isn't any escape from the conclusion that Mrs. Martin was a passenger on defendant's train and destined for Ellisville. If she was a passenger on the train and destined for Ellisville, the authorities hold that it is the duty of some member of the train crew to announce the arrival at the stations where the train regularly stops and afford an opportunity to the passengers to disembark. Since appellant relies upon the case of *Southern R. R. Co.* v. *Kendrick,* 40 Miss. 374, we presume that he will not dispute the correctness of the principle of law therein announced. We further quote from *Sevier* v. *Vicksburg & Meridian R. R. Co.,* 61 Miss. 8, cited by appellant.

It was the duty of appellant on this occasion (1) to go into the coach and announce the fact that the station at Ellisville had been reached; (2) to afford appellee an opportunity to get off the train. It did not do either of these necessary things. Mrs. Martin knew when she got to Ellisville, and, therefore, we do not make any point on the question of the duty of the conductor to announce the station, but we certainly say that it was negligence on the part of the railroad company to have the door of a passenger train closed so that passengers could not get off at the different stations along the road.

Now, if defendant was guilty of negligence in not affording appellee an opportunity to get off at Ellisville, this of itself would entitle appellant to compensatory damages. If, after defendant had been shown to be guilty of negligence toward this appellee, appellee went further and showed that the conductor acted insolent or insulting or harsh toward her, then the jury was warranted in assessing punitive damages. *Dorrah* v. *Illinois Central R. R. Co.,* 3 So. 36; *Yazoo & Miss. Valley R. R. Co.* v. *Hardie,* 55 So. 42.

Appellant insists in his brief that there was nothing in the words of the conductor that was insolent or insulting. But we are not to judge the manner and conduct of the conductor altogether by the words he used. He may have had a very insulting and offensive manner in stating a proposition, when the mere statement of the proposition itself would not be insulting. Appellant cites several authorities in his brief to sustain his contentions that appellee was not entitled to exemplary damages. Upon a careful examination of the cases cited, together with an examination of another line of authority, it will be found that the cases cited by appellant are not in point with the facts in the case before the court.

*Leonard B. Melvin,* also, for appellee.

There are but two issues invoked: (1) Was appellant railroad company negligent to this passenger? (2) Was

the conductor rude, insulting, or did he aggravate the circumstances?

We do not see how counsel for appellant could raise any issue as to whether or not appellee was a passenger on the train from Laurel to Ellisville. The conductor so made her a passenger by his own act, if she had not been otherwise. The conductor himself, the agent of appellant, ratified the act of appellee and collected a fare for her riding from Laurel to Ellisville. The one dollar and five cents was the total fare from Laurel to Ellisville, not from Ellisville to Hattiesburg. It is not disputed in the record that it was Mrs. Martin's intentions to continue her journey on to Ellisville. 6 Cyc., page 536, sec. B; 6 Cyc., page 537, sec. B-11.

The court has held that as to whether or not one is a passenger is a question for the jury. If Mrs. Martin was a passenger on this train, then it became the duty of the train crew, who were the servants of appellant, to afford her the opportunity to disembark from the train at Ellisville, as it was their custom to do, as they had through a number of years of continued practice permitted their passengers to get off at Ellisville, and as they had so advertised by custom and practice to the general public for a number of years. *Roger & Hearn* v. *John J. McCaugh*, 32 Miss. 17.

Counsel for appellant would infer that appellee and appellant are equally negligent and that because of this fact appellee cannot recover. The jury, as we understand the law to be, are the sole judges of this question and have settled this matter in their verdict. *Memphis & Charleston R. R. Co.* v. *Whitfield*, 44 Miss. 465.

Appellant railroad company had notice, when their train passed through Laurel, that appellee did not get off there and they had not made one single effort to ascertain the reason why, or her condition whatever. We do not believe that this court will now hold that it was the duty of this lady, Mrs. Martin, to chase up and down some three or four cars to find the conductor and apprise

him of the fact that she intended to get off at Ellisville, when the conductor says himself that his crew knew that she did not get off at Laurel.

II.   Was the conductor rude, insulting or did he aggravate the circumstances?   Is this a case for punitive damages?   To ascertain the true rule by which punitive or exemplary damages are allowed, see *Southern R. R. Co.* v. *Kendrick,* 40 Miss. 374; *Memphis & Charleston R. R. Co.* v. *Whitfield,* 44 Miss. 466.

Counsel for appellant have cited a number of authorities in their brief.   We have made a careful study of them and it is our opinion that they do not apply in this case.   Almost without exceptions they are without any element of insult, rudeness, gross negligence, or aggravation, necessary to place them in a class with the one at bar. From the study and investigation that we have made it seems that this case has its true classification in the case of *Jackson Electric & Light Power Co.* v. *Lowry,* 30 Miss. 634; *Railroad Co.* v. *Hurst,* 36 Miss. 660; *Higgins* v. *Railroad Co.,* 64 Miss. 80; *Hurn* v. *McCaugham,* 32 Miss. 17; *Memphis & Charleston R. R. Co.* v. *Whitfield,* 44 Miss. 465.   Believing that this case stands with these cases cited and not in the class with the cases cited by counsel for appellant, we most earnestly insist that this case should be affirmed.

Anderson, J., delivered the opinion of the court.

Appellee, Mrs. J. R. Martin, brought this action in the circuit court of Jones county against appellant, New Orleans & Northeastern Railroad Company, for damages for an alleged injury done her by appellant in carrying her beyond her station as a passenger on its line of railroad, and also because of offensive and insulting language addressed to her by the appellant's conductor in charge of its train on which appellee was a passenger, growing out of the fact that she had been carried beyond her station.   Appellee recovered a judgment for

five hundred dollars, from which appellant prosecutes this appeal. .

Appellant contends that the trial court erred in refusing its request for a directed verdict in its favor. In determining the merits of that question, the evidence should be considered most favorably to appellee, and, so construing the evidence if it tends to establish appellee's case, this question was one for the jury and not for the court. Appellee's case most favorably viewed is as follows:

Appellee was a passenger on appellant's line of railroad, returning from a meeting of the Grand Chapter of the Eastern Star at West Point, in this state, which meeting she had attended as a delegate from her home at Ovett, also in this state. Appellee was one of something like forty delegates, composed of ladies and gentlemen, from points in South Mississippi, returning from the meeting of the Grand Chapter of the Eastern Star. These delegates had return tickets to Heidelberg, Sandersville, Laurel, Hattiesburg, Lumberton, Poplarville, and Picayune, on appellant's line of railroad, but none for Ellisville. They were traveling in a Mobile & Ohio passenger coach in which the Mobile & Ohio Railroad Company had carried them from West Point to Meridian. At the latter place, which is the northern terminus of appellant's line of railroad, this Mobile & Ohio car was attached to the rear of one of appellant's afternoon south-bound trains, which made stops between Meridian and Hattiesburg only at certain stations. It was a vestibule train; the doors could only be opened by first raising the trap doors above the steps leading in and out of the train.

At Meridian the conductor made out a list from the tickets held by the Eastern Star delegates turned over to him by the Mobile & Ohio Railroad conductor in charge of the train that brought this special car from West Point to Meridian, showing the stations to which the tickets were returnable, and turned this list over to his flagman

with instructions to open the proper vestibule door leading out of the special car at such stations so that they could disembark. The flagman had this list and obeyed the conductor's instructions in that respect. The special Mobile & Ohio car was used alone for carrying and disembarking the Eastern Star delegates. No other passengers were taken thereon. The next regular stop of appellant's train carrying the special car after leaving Laurel was Ellisville, and the next was Hattiesburg. The vestibule doors leading into the special car were not to be opened at any station except those to which the Eastern Star delegates had return tickets.

Appellee was given an opportunity to get off at Laurel, which was her destination, according to her ticket. However, she had made up her mind, for certain reasons, to go to Ellisville and disembark there. But she failed to inform the conductor or any other employee connected with the train of her intention so to do. She simply kept her seat with the uncommunicated purpose in her mind to get off at Ellisville, instead of Laurel. The train reached Ellisville in due course, where it stopped, but the flagman did not open the vestibule door to the special car because his list showed that no Eastern Star delegates had return tickets to that place. When the train stopped at Ellisville, appellee without asking the help of any one, or notifying any of the train crew of her purpose, undertook to open the vestibule door to the special car and was unable to do so, and thereupon returned to her seat. Immediately after the train pulled out from Ellisville, a friend of appellee informed the conductor that appellee desired to get off at Ellisville. At that time the train was well under way, and when the conductor went back into the special car to interview appellee about the matter the train was, according to one witness, near the Agricultural College, and, according to another, some two or three miles out of Ellisville. Appellee asked the conductor to stop the train and let her off. The conductor replied that he could not stop the

train, and that appellee would have to go on to Hatties-
burg, the next stop, and pay her fare to that station,
and thereupon she paid the fare, one dollar and five cents.
Appellee testified that that was all that transpired be-
tween them except she said his manner was offensive
and insulting. She did not claim that any language was
used by the conductor that was offensive and insulting,
but only his manner was as he spoke.

Was there any breach of duty due by appellant to
appellee in failing to open the vestibule door of the
special car in which appellee was traveling so as to en-
able her to disembark at Ellisville? The court said, in
*Southern Railway* v. *Kendrick,* 40 Miss. 374, loc. cit. 384
(90 Am. Dec. 332):

"Passengers on a public conveyance are of a different
nature [that is, from goods]. They are persons endowed
with volition and capability of rational locomotion. They
are not delivered to the keeping of the carrier, but, of
their own will, make use of his vehicle as a means of con-
veyance, and take their seats for the purpose of being
transported from one place to another, co-operating
with him in accomplishing the end of the undertaking,
which is to be safely carried to a given place, where it
is to be presumed they will be careful to do what is neces-
sary on their part to this purpose.

"In the case of goods, the obligation is to carry and
deliver; as to passengers, it is simply to carry, and to
allow them sufficient time and opportunity to leave the
vehicle. . . . It would be unreasonable to require
personal warning to each individual passenger. . . .
It is better to require something to be done by the pas-
sengers, and all that is required by the prevalent custom
is that he [the conductor] shall use reasonable care and
vigilance in attending to the business he has under-
taken."

Appellee made no complaint, and had no right to make
any, that, on reaching Ellisville, the station was not an-
nounced in the special car by the conductor or any one

else. She testified that she knew the train was approach-
ing Ellisville, and knew when it stopped at that station.
She attempted to get off there and failed to do so be-
cause the vestibule door was not opened. Her complaint
is, first, that she was not given an opportunity to get
off at Ellisville; and, second, that the conductor was in-
sulting toward her while discussing the matter with her.
If appellee is right in her position, then a passenger on a
day coach who had gone back into a Pullman car to talk
to a friend would have the legal right to have some of
the train crew in charge of the train to go back into the
Pullman car and announce his station before it was
reached. This was a special car used for a special pur-
pose and that was to carry these Eastern Star delegates
back to their destinations as shown by their tickets. Of
course they had the right to change their destinations,
but we are of opinion that if that was done it was their
duty to give some one of the train crew having duties
in reference thereto notice of such changes, so that the
proper opportunity could be given for them to disem-
bark.

Under the principles laid down in the Kendrick case
as applied to the facts of this case, we think appellee's
conduct was the sole cause of her not being given an op-
portunity to get off at Ellisville. She knew before she
got to Ellisville that she desired to get off there; she
knew that her return ticket was to Laurel, which station
she had passed; and she is bound to have known that
neither the conductor nor any of the balance of the train
crew had any knowledge of her change of purpose to get
off at Ellisville instead of Laurel. After leaving Laurel,
all she had to do was to inform the conductor, or have
some one else do it for her, that she had changed her des-
tination from Laurel to Ellisville, and doubtless she
would have been given an opportunity and gotten off at
Ellisville without any trouble. It was too much to re-
quire of the flagman that, when he saw from his list of
the delegates that the required number failed to get off

at Laurel, he go through the entire train before leaving Laurel in search of the missing ones. He could have reasonably decided that they had gone forward into the regular coaches and left the train in that way. It was held in the Kendrick case that passengers are not carried and delivered as goods are transported and delivered. Passengers are required within the bounds of reason to co-operate with the carrier in traveling and alighting from the train at their destinations. In the case of goods, the obligation is to carry and deliver; as to passengers, the obligation is to carry with proper care and allow them sufficient time and opportunity to leave the train. It was held further in the Kendrick case that it would be unreasonable to require a personal warning to each individual passenger on reaching his destination, and all that is required of those in charge of passenger trains is to have the stations announced.

We hold, therefore, there was no breach of duty on the part of appellant in its failure to open the vestibule door to this special car at Ellisville. Nor do we think there was any breach of duty on the part of appellant in not backing its train after leaving Ellisville and discovering that appellee desired to get off there, in order to permit her to do so. Appellant owed at that time the larger duty to the other passengers to carry them on. Trains run on schedules. The traveling public, to a great extent, make their engagements, take trains, and travel with reference to those schedules. Perhaps on this particular train there were a number of passengers having various destinations in this state and in other states; probably some making short connections with other railroads. They had the right to have the train proceed.

Appellee contends, however, that, even though thus far appellant was guilty of no breach of duty toward her, appellant was guilty of a willful wrong to her, in that after the train left Ellisville the conductor was offensive and insulting to her in the interview occurring between them with reference to her failure to leave the train at Ellis-

ville. Using her own language, this is what occurred: The conductor asked, " 'Do you want to get off at this stop?' And I said, 'I do; will you please back up?' And he said, 'No; you can't get off here,' " and stated that she would have to pay her fare to Hattiesburg, which she did, and got off there. She testified that he used no offensive language, but that his manner was insulting and offensive.

In *Mississippi & Tennessee Railroad Co.* v. *Gill,* 66 Miss. 39, 5 So. 393, the facts were these: The plaintiff, a passenger, pulled the bell cord to signal the engineer to stop the train. The conductor's language was, "You have broken my bell cord, sir." The plaintiff testified that this was said in an angry and insulting manner. He did not state however, what the manner of the conductor was or wherein it was insulting. The court said that it was not a case for punitive damages even on plaintiff's evidence; that "brusqueness on the part of a railroad conductor is not an insult for which its employers are to be punished, where it amounts to no more than in this record." *K. C., M. & B. R. R. Co.* v. *Fite,* 67 Miss. 373, 7 So. 223, is in point. The plaintiff in that case asked the conductor to stop at Miller's, a station. The conductor replied, "Hell, yes; it is a regular station." The court held that plaintiff was not entitled to exemplary damages. In *A. & V. Railway Co.* v. *Lowry,* 100 Miss. 860, 57 So. 289, the conductor in charge of a passenger train demanded additional fare for the corpse of the passenger's child. The testimony showed that the passenger had presented the conductor with a check for the fare of the corpse, and the conductor said, "I can't honor that." Plaintiff testified that his manner was "harsh and gruff, and he appeared to be mad." The court held that it was not a case for punitive damages. In *Light Co.* v. *Taylor,* 112 Miss. 60, 72 So. 856, the conductor's language was, "Do you want to get off at this stop?" Plaintiff replied, "I do; will you please back up?" And he said, "No; you will get off right here," Plaintiff tes-

tified that the conductor's manner and tone were rough. The court held that it was not a case for punitive damages. In *M. & O. R. R. Co.* v. *Favior,* 115 Miss. 96, 75 So. 777, the conductor demanded that the passenger get off the train at Macon. The passenger insisted that she had bought a ticket to Meridian. The conductor replied that she had not and that he would wire the agent at West Point and see. Later he came back and told plaintiff that the ticket agent at West Point said she had not bought any ticket there, and that he would have the marshal of the town to take her off the train. Plaintiff testified that she felt very embarrassed and started to cry. The court held that it was not a case for punitive damages. We do not understand the earlier decisions of this court relied on by appellee to be in conflict with those above.

In the present case an instruction authorizing punitive damages was given the jury, and their verdict was principally, if not entirely, for punitive damages because the evidence shows that appellee suffered neither physical nor financial damage except the small sum paid by her representing the fare between Ellisville and Hattiesburg, which was the result of her own fault and not that of appellant.

We do not think this is a case for punitive damages, and therefore the court erred in submitting that question to the jury. Appellant's request for a directed verdict should have been granted.

*Reversed, and judgment here for appellant.*