## STRICKLIN *v.* HARVEY.

(Division A. Feb. 28, 1938. Suggestion of Error Overruled April 25, 1938.)

[179 So. 345. No. 33093.]

Gilbert & Cameron, of Meridian, and Nichols & Huff, of Forest, for appellant.

**D. M. Graham** and **Mize, Thompson & Mize**, all of Gulf-port, for appellee.

Argued orally by **J. Knox Huff**, for appellant, and by **Robert W. Thompson, Jr.,** for appellee.

**McGehee, J.,** delivered the opinion of the court.

This is an appeal from a judgment of the circuit court of Newton county in the sum of $7,500, rendered in favor of the appellee for personal injuries sustained by falling from a temporary bridge constructed by the appellant across Red creek in Stone county for use in connection with the building of a permanent concrete and steel bridge across said creek by the appellant under a contract which he had with the Mississippi State Highway Commission.

The temporary bridge was durably constructed, and was such a bridge as is customarily used by bridge builders to parallel the course of the permanent bridge, and intended primarily for use in moving heavy machinery to and fro in the work of constructing the permanent bridge so long as the machinery is needed for that purpose, although it is frequently used during this time by the laborers on such jobs, as a means for walking to and from their work. Thereafter it is used as a bridge for

transporting materials on trucks, etc., to where the same are needed in the work on the permanent bridge across the stream as the construction progresses. The stringers on this temporary bridge were made of rough logs, from 12 to 14 inches in diameter, and were placed from 12 to 14 inches apart, two on each side, extending across the entire length of the bridge, so that when used as foot-logs by the laborers in performing their work they constitute a sort of double track not too wide for the stride of a normal man, although most of the laborers who walk upon them confine their steps to a single stringer. These four stringers constitute the entire top surface of this temporary bridge, other than the cross-pieces on which they are fastened, and consist of rough, round logs of the dimensions hereinbefore stated, some sweetgum, mostly pine, and a few creosoted logs strung along the route of the approximately 200-foot length of the bridge, but not more than one creosoted log was used in a single bent. These logs spanned a distance several feet long between the end of each bent, where the piling was driven, four in a row, crosswise underneath the same.

The proof discloses that these creosoted logs were slippery, especially so when the sun drew the oil to the surface. Appellant had provided a small boat or skiff for the use of the appellee and the other employees in crossing the stream, to go to and from their work, which was sufficient to convey five or six men at a time, and a rule was promulgated, whereby a laborer was always furnished to convey the boat from one side of the stream to the other when needed by another laborer in going to and from his work. This was the method used by the laborers in crossing the stream until the temporary bridge had reached the stage of completion where the stringers had been securely fastened on top thereof; and the testimony shows, without substantial conflict, that this boat continued to be available for use for those who desired to cross the stream by that method; but that the use of the boat was entirely abandoned by most of the laborers af-

ter the temporary bridge had reached such state of completion, and that thereafter most of the laborers constantly walked the log stringers on the bridge in going to and from their work, with the knowledge and acquiescence of the appellant. In other words, the temporary bridge became the usual and customary method followed by the laborers in crossing the stream in the performance of their work.

The appellee was employed as a pile-driver foreman, and the pile driver was one of the heavy machines operated on the temporary bridge in the construction of the permanent bridge. He testified that he had crossed the temporary bridge from the south to the north side by walking the stringers, for the purpose of ascertaining from a crew of workmen near the north end of the bridge when they would be ready for him to move the pile driver to that place; and that on returning he had walked a short distance when he stepped on one of the slippery creosoted log stringers and fell into the stream, striking his knee against the end of a log, and fracturing it so that he was severely injured and crippled for life. The testimony is in conflict as to whether he was engaged about his duties at the time he undertook to cross the bridge; but the jury determined that issue of fact in his favor. The testimony on the part of the appellant showed that appellee was intoxicated at the time he fell, and that this condition was the proximate cause of his fall and injury; but the appellee and his witnesses denied positively that he had been drinking; and this issue was likewise determined in his favor by the jury.

The ground of negligence charged and relied upon by the appellee was that the appellant failed to exercise reasonable care to furnish him a reasonably safe place to work, in that the appellant failed to place decking or flooring across the stringers on which the laborers could walk in performing their work when the bridge came into constant use by the laborers as a means of going to and from their work. The proof discloses that custom-

arily temporary bridges such as this, commonly used in connection with the construction of a permanent concrete and steel bridge, were not decked or floored until after the use of heavy machinery thereon had ceased. The proof on behalf of the appellant established the fact that one of the heavy machines used on the temporary bridge was a machine consisting of a crane or boom weighing approximately 29 tons, which was moved along the bridge by means of laying its own track on top of the stringers, which track consisted of mats about 4 feet wide and 10 feet long, constructed in two layers of 3 by 8, or 3 by 10 lumber, which mats were swung around by the machine in front thereof, and then picked up and laid again as the crane proceeded along the bridge; that it was impracticable to deck the bridge with the decking commonly used for flooring a bridge for the use of trucks until after the work of this heavy machine and the pile driver had been completed, for the reason that this machine would break and crush to pieces such decking.

On behalf of the appellee, it was shown that while it may not have been customary to deck the bridge in this manner while the heavy machine was still being used thereon, the mats used as a track for the machine could have been laid on top of the decking. In answer to this contention the appellant offered evidence to show that even then the weight of the machine would break and ruin some of the decking, unless the stringers were of uniform size, so as to form a level passageway.

Except for the fact that this temporary bridge contained several creosoted stringers on which any of the laborers were likely to step when momentarily forgetful of the particular type of stringer over which they were walking, we should be inclined to hold, under the authority of the cases of Vehicle Woodstock Co. v. Bowles, 158 Miss. 346, 128 So. 98, 99; Seifferman v. Leach, 161 Miss. 853, 138 So. 563; Brown v. Coley, 168 Miss. 778, 152 So. 61; Hammontree v. Cobb Const. Co., 168 Miss. 844, 152 So. 279, and Newell Contracting Co. v. Flynt, 172

Miss. 719, 161 So. 298, 743, that the appellant was not liable; that to require an employer to deck the bridge while the heavy machinery was still being used thereon, and before it was ready for use by the trucks in hauling other material, would be to impose an extraordinary burden on the employer, contrary to the usual custom followed by prudent bridge contractors under similar circumstances. But the testimony of the appellee shows that the presence of these creosote logs, on one of which he stepped, slipped, and fell, was the sole proximate cause of his injury, and no reason was assigned by appellant for placing these slick logs on the bridge; and even though it may not have been customary to deck a bridge of this character when constructed entirely of rough logs in the usual manner, at that state of its completion, we are of the opinion that it was a question for the jury to determine whether the employer had used reasonable care to furnish a reasonably safe place for his employees to work, in view of the presence of these slippery creosoted logs in the walkway across the stream on the occasion complained of.

In determining this question, it was for the jury to consider whether or not the place could have been made reasonably safe by placing a plank of 3 by 10 lumber between the two logs or stringers on each side of the bridge, or by adopting some other practical means of rendering the place reasonably safe. It is true that the negligence charged was the failure to deck or floor the bridge; but it was still for the jury to say whether or not this should have been done in the exercise of reasonable care in the instant case, where the employer chose to leave these slippery creosoted stringers there to form a part of the walkway, then being commonly used by the laborers with the knowledge and approval of their employer.

Considerable argument is made to the effect that the appellee knew that the bridge was not decked, and assumed the risk incident to its use; but the servant did not assume the risk of the master's negligence in not furnish-

ing a reasonably safe place to work. The risk which a servant assumes is the danger incident to the service remaining after the master has exercised reasonable care for the safety of the servant. Wilbe Lumber Co. v. Calhoun, 163 Miss. 80, 140 So. 680; section 513, Code of 1930; Edwards v. Hanyes-Walker Lumber Co., 113 Miss. 378, 74 So. 284; Gow Co., Inc., v. Hunter, 175 Miss. 896, 168 So. 264. In the Wilbe Case the court also upheld and reaffirmed the principle that even though another way was provided, such as furnishing the boat in the present case, if it was the habit and custom, known to the employer, for the servant to use another way or route of passage, and the employer acquiesces in such custom, it would not constitute negligence on the part of the servant to use the way or route commonly used, in the usual and customary manner. To the same effect is Hardy v. Turner-Farber-Love Co., 136 Miss. 355, 101 So. 489. In the cases of Stokes v. Adams-Newell Lumber Co., 151 Miss. 711, 118 So. 441, Anderson v. McGrew, 154 Miss. 291, 122 So. 492, and Martin v. Beck, 177 Miss. 303, 171 So. 14, relied on by appellant, the choice of another way by the servant, which was the one customarily used at the time of the injury with the knowledge and approval of the master in preference to a safe way primarily provided by the master for the purpose, was not involved, and this principle, as announced in the Hardy and Wilbe Cases, was not under consideration.

This view disposes of the assignments of error for the refusal of instructions asked by the appellants, which sought peremptorily to instruct the jury that the appellee was guilty of negligence on the occasion complained of, either as to his choice of a route, or the assumption of risk incident to the one used.

Appellant next contends that the court below erred in instructing the jury that if they believed that the temporary bridge was the way generally and customarily used for the men to walk on in performing their duties; and if they further believe from the evidence that the

defendant knew, or was aware, that the temporary bridge was so used by his men in the course of their employment, and having such knowledge, permitted it to be done, and used it himself, then it was the defendant's duty to exercise reasonable care to render such temporary bridge reasonably safe for such use—the ground of the objection being that the instruction assumed that the place was not reasonably safe. We do not think that the instruction is subject to this interpretation. It merely states the duty of the defendant under these circumstances. And the other instructions given for the plaintiff required the jury to believe, from the preponderance of the evidence, that the defendant had not exercised reasonable care to make the place reasonably safe, and to believe that it was not reasonably safe, before they were entitled to return a verdict in his favor. All of the instructions given, both for the plaintiff and for the defendant, fairly and correctly present the issue of negligence to the jury.

We are of the opinion that the action of the court in refusing the peremptory instruction for the appellant was correct, for the reason that everything must be considered as proved which the evidence establishes, directly or by reasonable inference, against the party asking for a peremptory instruction. New Orleans & N. E. R. Co. v. Jackson, 140 Miss. 375, 105 So. 770; New Orleans & N. E. R. Co. v. Martin, 140 Miss. 410, 105 So. 864; Yates v. Houston & Murray, 141 Miss. 881, 106 So. 110; Lowe v. Mobile & O. R. Co., 149 Miss. 889, 116 So. 601; Lee County Gin Co. v. Middlebrooks, 161 Miss. 422, 137 So. 108; Keith v. Yazoo & M. V. R. Co., 168 Miss. 519, 151 So. 916; Gravette v. Golden Saw Mill Trust, 170 Miss. 15, 154 So. 274; Masonite Corporation v. Dennis, 175 Miss. 855, 168 So. 613.

Affirmed.